UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| ERNESTO ESPINOZA, on behalf of himself and all others similarly situated | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No. 4:12cv1711 SNLJ No. 4:12cv1815 RSW |
| RICHARD M. WHITING and MARK N. SCHROEDER, | ) ) | No. 4:12cv2167 FRB CONSOLIDATED |
| Defendants | ) ) ) | |

**MEMORANDUM AND ORDER**

These consolidated securities class action cases are before the Court on competing motions for appointment of lead plaintiff, lead counsel, and liaison counsel. The cases are brought on behalf of all persons who purchased Patriot Coal Corporation securities between October 21, 2010 and July 6, 2012 against certain officers of Patriot Coal pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78u-4(a)(3)(B), as amended by Section 101(b) of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). The officers are alleged to have made false and misleading statements concerning Patriot Coal's court-ordered environmental remediation efforts. The company is now in Chapter 11 bankruptcy.

**I.      Background**

On November 21, 2012, pursuant to the PSLRA, six movants filed motions for consolidation and appointment as lead plaintiff and lead counsel, including: (1) John Ziants (#4);

(2) James Karas and Denis Dehne (the "Karas-Dehne Group") (#7); (3) James Schmitt, Karel Rybacek, and Douglas Combs (the "SRC Group") (#8); (4) Jan Arnett, Douglas Keehn, Dennis Doucet, Kevin Lowery, and Thomas J. Podraza (the "Patriot Coal Investor Group" or "PCIG") (#14); (5) the Cambridge Retirement System ("Cambridge") (#16); and, finally, (6) Richard Sitko (#20).

The Class Period alleged begins on October 21, 2010, when Patriot Coal announced its court-ordered environmental remediation. Thereafter, Patriot Coal filed several updates and issued press releases going to the remediation and the company's financial health and market forecasts. On May 8, 2012, however, the company issued the first of several disclosures correcting inaccurate information that had been conveyed to the public. The company's stock price fell as the result of each disclosure. The last day of the Class Period is July 9, 2012, when the company announced that it would file for bankruptcy.[1] The plaintiffs filed their complaints against the defendants beginning in September 2012, and the timely motions for appointment of lead plaintiff, lead counsel, and liaison counsel followed.

## II.     Legal Standard

The PSLRA sets forth a detailed procedure for the selection of a lead plaintiff to oversee securities class actions. *See* 15 U.S.C. §78u-4(a)(3). The Court is required to appoint as lead plaintiff the movant that the Court determines to be most capable of adequately representing the

---

[1] The Complaint filed by Kevin Lowery alleges the longest class period, three days longer than the other two complaints. For the purposes of the instant motion, the Court will consider the longest alleged class period. *See Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 624-25 (E.D. Wis. 2009) ("[R]ather than ruling on the proper class period, courts usually . . . use the most inclusive class period and select as lead plaintiff the movant with the largest financial interest under that period.")

interests of Class members. *See* 15 U.S.C. §78u-4(a)(3)(B)(i); *see also In re BankAmerica Corp. Sec. Litig.*, 350 F.3d 747, 751 (8th Cir. 2003). The PSLRA further instructs that the court presumes "that the most adequate plaintiff...in the determination of the court, has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii).

**III.    Discussion**

The parties disagree who among them has the largest financial interest. Under the PSLRA, damages are calculated based on the difference between the purchase price paid for the shares and the average trading price of the shares during the 90-day period beginning on the date the information correcting the misstatement was disseminated. *See* 15 U.S.C. §78u-4(e)(1). Under *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005), a shareholder can claim the drop in share price as a result of the corrective news, but never more than that amount permitted under the PSLRA. *See* 15 U.S.C. §78u-4(e). Because it is clear that of the six movants, two — the Patriot Coal Investor Group and the SRC Group — have the largest financial interest in this case, the Court confines its analysis to those two groups.

The Patriot Coal Investor Group calculated its financial interest as $483,329, and SRC's financial interest as $197,105, by determining how many shares were purchased during the Class Period and then by determining how many of those shares were held through each of the partial corrective disclosures that occurred from May 8 to July 9, 2012. For every calculation, the Patriot Coal Investor Group calculated its loss under *Dura* and under the damage cap provided for by 15 U.S.C. §78u-4(e), and it based its loss on whichever formula yielded the lower loss calculation. The *Dura* loss is equal to the number of shares times the price drop, and the statutory damage cap

loss is equal to the number of shares multiplied by the difference between the purchase price and the ninety-day average price.

The SRC Group's methodology calculated its financial interest as $1,141,072. The SRC Group subtracted the average share price during the look-back period from the share price on the date of purchase, less any proceeds from shares sold. That method, points out PCIG, attempts to claim a financial interest based on market losses that are not recoverable under *Dura*. For example, in calculating Karel Rybacek's losses, the SRC Group calculated losses on all of his purchases, even though he sold 28,200 shares on April 11 and April 20, 2012, before any of the alleged partial corrective disclosures took place on May 8. Under *Dura*, Mr. Rybacek cannot recover those losses because they were not proximately caused by the fraud alleged in this case.

When the SCR Group attempted to correct for its including "in/out losses" (the losses that were incurred when group members sold shares at prices below their purchase price but before the corrective disclosures), it calculated financial losses of $1,042,638 for itself and $831,205 for PCIG. But those numbers still take into account losses from the original purchase prices and not losses proximately caused by the alleged fraud. The company's stock price dropped quite a bit from 2010 and 2011 prices, when share prices were in the mid-teens and mid-twenty-dollar-range, up until the May 8, 2012 first partial corrective disclosure, when the price was just $5.53. As the Supreme Court recognized, when the purchaser sells after the truth is disclosed, "even at a lower price, that lower price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price." *Dura Pharms.*, 544 U.S. at 343-44. The courts recognize that the securities

"statutes make these ... actions available, not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause." *Id.* at 345. It is clear to this Court that the SRC Group's financial interest calculation is not in keeping with the Supreme Court's requirement that the "plaintiff prove that the defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss." *Id.* at 346.

The SRC Group argues that its calculation is nonetheless proper because they contend it is premature for the Court to engage in what they call a "detailed merits based analysis on loss causation" at this stage. The cases to which SRC cites, however, are distinguishable in that, here, there does not appear to be any disagreement regarding the dates of the company's partial corrective disclosures. The Patriot Coal Investor Group's well-reasoned approach addresses the problems the *Dura* Court and others have cautioned against. *See In re K-V Pharm. Co. Sec. Litig.*, No. 4:11-cv-01816-AGF, 2012 U.S. Dist. LEXIS 62161, at *11 (E.D. Mo. May 3, 2012) ("[F]or purposes of evaluating financial interest, it makes sense to disregard any gains or losses resulting from stock trades before the truth was disclosed.") (quoting *Schueneman v. Arena Pharms., Inc.*, No. 10cv1959 BTM(BLM), 2011 U.S. Dist. LEXIS 87373, at *13 (S.D. Cal. Aug. 8, 2011)); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV01825 (NNG)(RER), 2007 U.S. Dist. LEXIS 14878, at *13 (E.D.N.Y. March 2, 2007) ("[A]ny losses that [plaintiff] may have incurred before [the] misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in this litigation."). Under the *Dura* approach, then, the Patriot Coal Investor Group has the largest financial interest in this case.

The PCIG also ably meets the requirements of Rule 23. Rule 23(a) states as follows:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "Although Rule 23(a) includes four requirements—numerosity, commonality, typicality, and adequacy—the presumptive lead plaintiff 'need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23.'" *Mas v. KV Pharm. Co.*, 4:08-CV-1859 (CEJ), 2009 WL 1011506, at *2 (E.D. Mo. Apr. 15, 2009) (quoting *Reese v. Bahash*, 248 F.R.D. 58, 61–62 (D.D.C. Feb.11, 2008)). Examination of the remaining requirements may be deferred until the Lead Plaintiff moves for class certification. *See Haung v. Acterna Corp.*, 220 F.R.D. 255, 259 (D. Md. 2004); *In re Royal Ahold N.V. Securities and ERISA Lit.*, 219 F.R.D. 343, 350 (D. Md. 2003); *In re Milestone Sci. Sec. Litig.*, 183 F.R.D. 404, 414 (D.N.J. 1998).

Under Rule 23(a)(3), typicality exists where "the claims of the representative parties" are "typical of the claims of the class." "The typicality requirement of Rule 23(a)(3) is satisfied when each class member makes similar legal arguments to prove the defendant's liability." *Minneapolis Firefighters' Relief Ass'n v. MEMC Elec. Materials, Inc.*, No. 08-1411, 2008 WL 5233106, at *2 (E.D. Mo. Dec. 12, 2008) (citing *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir.1992)). PCIG meets the typicality requirement because the claims of its members are identical to, and non-competing and non-conflicting with, the claims of the other Class members. Members of the Patriot Coal Investor Group are not subject to any unique or special defenses. Thus, PCIG meets the typicality requirement of Rule 23 because its claims

are the same as the claims of the other Class members.

Next, under Rule 23(a)(4), the class representative must "fairly and adequately protect the interests of the class." The Court must ask whether the interests of the movant are clearly aligned with the members of the putative Class and whether there is evidence of any antagonism between the interests of the movant and other members of the Class. 15 U.S.C. §78u-4(a)(3)(B). The Patriot Coal Investor Group's interests are clearly aligned to those of the other members of the Class. There is no evidence of antagonism between the members of the Patriot Coal Investor Group and the other Class members. Further, members of PCIG have a significant, compelling interest in prosecuting these actions to a successful conclusion based upon the large financial losses each of its members has allegedly suffered as a result of the wrongful conduct alleged in the complaints.

In addition, the members of PCIG communicated with one another before their counsel filed the instant motion and have indicated that they form a cohesive group that is ready and willing to manage the litigation actively. By their declarations, they have agreed: "to prosecute these Actions together; to regularly consult with each other regarding the prosecution of this litigation; how they will share information; how they will manage the litigation together as a group; how the litigation will be managed on a day-to-day basis; how decisions will be made and executed; to confer without counsel if needed; and how counsel will be managed." Finally, PCIG has shown that it will adequately represent the class because its selected law firms are experienced in prosecuting securities class actions.

As for the appointment of Lead Counsel, the PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the Class, subject to the Court's approval. 15 U.S.C.

§78u-4(a)(3)(B)(v). "[T]he Act is explicit on the lead plaintiff's authority to select and retain counsel[.]" *BankAmerica Corp.*, 350 F.3d at 751. The Patriot Coal Investor Group has selected Brower Piven to serve as Lead Counsel and Holland, Groves, Schneller & Stolze, LLC to serve as Liaison Counsel.

Accordingly,

**IT IS HEREBY ORDERED** that the Patriot Coal Investor Group's motion (#14) is GRANTED, and the other movants' motions to be appointed lead plaintiff (#7, #8) are DENIED.

**IT IS FURTHER ORDERED** that the Patriot Coal Investor Group (consisting of Dr. Jan Arnett, Douglas Keehn, Dennis Doucet, Kevin Lowery, and Thomas J. Podraza) is hereby appointed Lead Plaintiff for the Class pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934, 15 U.S.C. §78u-4(a)(3)(B), as amended by Section 101(b) of the Private Securities Litigation Reform Act of 1995; and

**IT IS FINALLY ORDERED** that the Patriot Coal Investor Group's selection of Brower Piven, A Professional Corporation, to serve as Lead Counsel and Holland, Groves, Schneller & Stolze, LLC to serve as Liaison Counsel is hereby approved.

Dated this 16th day of January, 2013.

                                                                     /s/ Stephen N. Limbaugh, Jr.
                                                                     UNITED STATES DISTRICT JUDGE